UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JEAN AZOR-EL, ANTHONY MEDINA,**
**RAMON GOMEZ, ANTHONY BROWN,**
**RONNIE COLE, DAKWAN FENNELL,**
**JAMES CARTER, ANTONIO GRAHAM,**
**MAURICE BARNAR, LANCE KELLY,**
And all others Similarly Situated,

**20-cv-3650**

CLASS ACTION
COMPLAINT

                    Plaintiffs,


               VS.


**NEW YORK CITY DEPARTMENT OF**
**CORRECTIONS, KISA SMALLS**, Warden,
North Infirmary Command, New York
City Department of Corrections;
**CITY OF NEW YORK; NEW YORK STATE**
**DIVISION OF PAROLE,**
In their Individual and Official
Capacities,

                    Defendants.



## INTRODUCTION


     This is a civil and disabilities rights class action filed
by Jean Azor-El, Anthony Medina, Ramon Gomez, Anthony Brown,
Ronnie Cole, James Carter, Antonio Graham, Dakwan Fennell,
Maurice Barnar and Lance Kelly, incarcerated detainees and
parolees, for compensatory and punitive damages, and injunctive

relief under 42 U.S.C. §1983, and for declaratory relief
pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201. The
instant action alleges deliberate indifference to Plaintiffs'
health, safety and well being, the failure to protect to prevent
the Plaintiffs' exposure to, the spread of, and/or their
acquirement of the Covid 19 virus in violation of the Eighth and
Fourteenth Amendments to the United States Constitution. While
Plaintiffs were incarcerated under the care and custody of the
City, Defendants also denied them medical and mental health
services, prophylactic cleaning materials and supplies, and did
not properly staff the jail, North Infirmary Command ("NIC"),
with sufficient security personnel, thus placing the Plaintiffs'
health, well being and safety in jeopardy in violation of the
Deliberate Indifference, Cruel and Unusual Treatment, and Equal
Protection Clauses of the Eighth and Fourteenth Amendments to
the United States Constitution. Defendants further violated the
Plaintiffs' substantive and procedural due process rights by
failing to conduct parole revocation and criminal proceedings in
a timely manner while in the Defendants' care and custody, all
of which violated the Fourteenth Amendment to the United States
Constitution.

## JURISDICTION

1. The Court has jurisdiction over Plaintiffs' federal
constitutional claims under 42 U.S.C. §§1331(1) and 1334(a)(1)
and (3) and 1343(a)(4).

2. Venue is proper in this district pursuant to 28 U.S.C.
§1391(b)(1) and (2).

**PARTIES**

<u>**Plaintiff**</u>

Plaintiff **Jean Azor-El** (Mr. Azor-El") is 47 years old and a detainee under the care and custody of the New York City Department of Corrections ("City Corrections" or "DOC"). Mr. Azor-El suffers from obstructive sleep apnea ("OSA") a disorder that is characterized by obstructive apneas, hypoapneas, and/or respiratory effort-related arousals caused by repetitive collapse of the upper airway during sleep. He therefore must use a C-PAP apparatus while he is sleeping.

Plaintiff **Dakwan Fennell** ("Mr. Fennell") is 45 years old and a detainee the care and custody of the New York City Corrections. Mr. Fennell suffers diabetes, chronic back pain from a misaligned lumbar condition, and sleep apnea. OSA is a disorder that is characterized by obstructive apneas, hypoapneas, and/or respiratory effort-related arousals caused by repetitive collapse of the upper airway during sleep. He therefore must use a C-PAP apparatus while he is sleeping.

Plaintiff **Maurice Barnar** ("Barnar") is 50 years old and a State inmate under the joint care and custody of the New York City and State Corrections. Mr. Barnar suffers from sleep apnea and therefore must use a C-PAP apparatus while he is sleeping.

Plaintiff **Antonio Graham** ("Mr. Graham") is a 51 years old detainee presently incarcerated under the care and custody of the New York City Department of Corrections. He suffers from

bronchitis and asthma and is left leg amputee with concomitant chronic phantom pain.

Plaintiff **Anthony Medina** ("Mr. Medina") is a 42 year old legally blind and neuropathically disabled parolee presently incarcerated at Rikers Island under the joint care and custody of the New York City and State Departments of Corrections for allegedly violating conditions of his parole.

Plaintiff **Ramón Gomez** (Mr. Gomez") is a 30 years old deaf mute presently incarcerated under the care and custody of the New York City Department of Corrections who lip reads, but primarily communicates manually via American Sign Language. Mr. Gomez had bone cancer 5 months ago but which is now in remission. He is presently recuperating from effects of radiation and chemotherapies.

Plaintiff **Anthony Brown** (Mr. Brown") is 39 years old parolee presently incarcerated at Rikers Island under the joint care and custody of the New York City and State Departments of Corrections for violating a condition of his parole. He is currently recuperating from a surgically repaired right ankle.

Plaintiff **Ronnie Cole** ("Mr. Cole") is a 59 year old detainee presently incarcerated under the care and custody of the New York City Department of Corrections . He is wheelchair bound from a July 7, 2019 gunshot injury with concomitant spinal pain, nerve damage and neuropathic pain as well as urologic uncontrollable bladder and bowels.  Mr. Cole also suffers from sleep apnea and he therefore must use a C-PAP apparatus while he is sleeping.

Plaintiff **James Carter** ("Carter") is a 51 years old parolee presently incarcerated at Rikers Island under the joint care and

custody of the New York City and State Departments of
Corrections for allegedly possessing a weapon, which violated a
condition of his parole. He suffers from asthma, a heart murmur,
a urologic bladder, left leg numbness and weakness, and cervical
spine injuries encompassing a slip disc. Because of Mr. Carter's
urologic malady he must use a catheter to void his bladder
because he cannot self-void. In September of 2019, he was shot 3
times in his left leg. Hence, he still suffers from residual
nerve damage, numbness, and tingling sensations throughout the
entire left leg. Said leg occasional swells to unnatural
proportions, whereby his shoe is unable to fit; or, he can
experience sporadic weakness, whereas the leg gives out
requiring Mr. Carter to use a wheelchair to ambulate.

Plaintiff **Lance Kelly** ("Mr. Kelly") is a 55 year old
sentenced inmate under the care and custody of the New York City
Department of Corrections awaiting transfer to State
Corrections.  Mr. Kelly suffers from Chronic Obstructive
Pulmonary Disease ("COPD"), asthma and sleep apnea. Due to the
apnea he must use a C-PAP apparatus while he is sleeping.


**Defendants**


Defendant **New York City Department of Corrections**
("City Corrections") is an agency of the City of New York
responsible for the care and custody of detained suspects
awaiting resolution of criminal matters, individuals sentenced
and serving convictions of one year or less, and parolees
awaiting resolution of parole revocation matters. City
Corrections receives state and federal funding to support its

programming, services and operations. City Corrections is sued in its official capacity.

Defendant **Kisa Smalls** ("Smalls") is the Warden of North Infirmary Command ("NIC"), a jail at Rikers Island. She is responsible for managing and supervising NIC's security and civilian personnel and providing for the safety, health and well being of all detainees and parolees at NIC. She is sued in her individual and official capacities.

Defendant **City of New York** ("City of New York") is a municipality of the State of New York and parent body of New York City Department of Corrections, and the principle employer of that entities agents and officers. The City is sued in its official capacity.

Defendant **New York State Division of Parole** ("Division of Parole" or "Parole") is a New York State agency recently unified with the New York State Department of Corrections to both become known under the unified agency name of: New York State Department of Corrections and Community Supervision ("DOCCS"). The Division of Parole, also known as Community Supervision, in relevant part, is responsible for monitoring and supervising all New York State parolees in society following their release from prison, supposedly to help them continue their rehabilitation as well as assist them with reintegrating and re-acclimating to their communities and society as a whole. Parole receives state and federal funding to support its programming, services and operations.

## STATEMENT OF FACTS

### A. Inhumane Jail Conditions.

During the Covid 19 national outbreak, specifically in the
City of New York where the virus is taking a drastic toll,
Defendants City of New York, City Corrections along with
Governor Cuomo, the New York State Assembly, and the City
Council as well as other New York officials agreed - as
prophylactic and ameliorative measures - to free incarcerated
persons (i.e., detainees and parolees) from New York City jails
to prevent their exposure to and the spread of the Covid 19
virus since said virus can result in their death, specifically
to those with certain underlying medical maladies.

Defendants City of New York, Division of Parole, and the
City Corrections have released hundreds of incarcerated
detainees and parolees from New York City jails, some of whom
have been accused of serious parole violations and/or a serious
crime, worse than that of the crimes and parole violations the
instant Plaintiffs are accused of, but nonetheless, Defendants
City of New York, Division of Parole and City Corrections have
consciously colluded to keep Plaintiffs incarcerated at Rikers
Island, an incubation hotbed for *the* deadly virus, thus placing
them at a higher risk of contracting the Covid 19 virus in
knowing disregard of their health, safety and well-being. This
constitutes blatant deliberate indifference and is also denying
the Plaintiffs their due process and equal protection rights in
relation to their parole and criminal matters being timely and
properly adjudicated.

Defendant City Corrections, as of the date of this writing, is presently understaffed due to the Covid 19 epidemic. Consequently, there are ongoing occasions when there is absolutely no security personnel in an area, thus putting the plaintiffs' safety and well being in jeopardy. For example, should a fight transpire or a detainee be stabbed and/or seriously injured, at times, there is no officer to prevent or quell the altercation nor someone to seek emergency medical assistance.

The Plaintiffs are presently incarcerated at NIC Annex. The entire Annex building is a medical facility.

Since early March of 2020, NIC annex has lacked sufficient medical, mental health and security personnel, which is putting the Plaintiffs and other detainees' health and safety in constant jeopardy.

The jail is also experiencing a shortage of food and medical supplies thus further putting the Plaintiffs' health and safety at risk. The food currently being served is nutrient deficient due to the lack of sufficient vitamins and minerals.

Defendants the City, City Corrections and Smalls are not disseminating gloves, masks, hand sanitizer[1] or disinfectant to the Plaintiffs or to the other detainees and correctional employees at NIC annex. This is placing the Plaintiffs' health and safety in jeopardize.

Moreover, City Corrections has a vast number of correctional officers and other employees whom have tested positive for Covid 19 or who have been exposed thereto, and who

---

[1] The reason hand sanitizer is not being issued is correction officials claim detainees can drink it to get drunk. Even if this is true, the sanitizer can be disseminated by an officer thus limiting its misuse.

are out sick due to said virus. Nonetheless, City Corrections is prematurely forcing these employees to return to work with threat of penalty while they are still symptomatic or before the virus has had the opportunity to run its course. Hence, this is jeopardizing the Plaintiffs' health, and the health and safety of all other NIC detainees and employees.

## B. Disregard to Plaintiffs' Health & Safety:

### a. Denied Medical Breathing Device.

Plaintiffs Azor-El, Fennell, Kelly, Barnar, and Cole, all suffer from sleep apnea. These Plaintiffs all use a C-PAP apparatus when sleeping which helps them breath throughout the night while asleep.

In early March of 2020, the NIC Respiratory Therapist confiscated the C-PAP machines under the guise that the devices were going to be cleaned. The C-PAP devices were confiscated because they allegedly exacerbated the chance of acquiring the Covid 19 virus. Nonetheless, even if true, the Defendants did not provide the Plaintiffs Azor-El, Fennell, Kelly, Barnar, and Cole with an alternative treatment in absence of their C-PAP apparatus.

When Plaintiffs Azor-El, Fennell, Kelly, Barnar, and Cole sleep without the C-PAP device throughout the night they constantly snore loud, gasp for breath, choke, snort and literally ceases breathing which causes them to promptly awake, and which interrupts a continuous sleep naturally required to

maintain physical and mental health and stamina. There is also
the possibility that when he experiences a cessation of breath
that he can literally die. However remote the possibility of
dying may be, it is still a possibility that needs to be
prevented because there still exist additional consequences from
prolonged intervals of not using the C-PAP device.

In addition, on those occasions when the Plaintiffs do not
get proper sleep, they awake with a chronic headache, sore
throat, are sleepy, fatigued and highly irritable.

Plaintiffs Azor-El, Fennell, Kelly, Barnar, and Cole all
sleep in the dorm along with the other Plaintiffs, detainees and
parolees and whose bed is 3 and-a-half feet from the next bed –
not the 6 feet required by the CDC for proper social distancing
– to prevent the spreads of the Covid 19 virus. Because of the
lack of sufficient spacing between the beds, the Plaintiffs are
at a higher risk of acquiring the Covid 19 virus and succumbing
to death due their pulmonary ailment as well as whatever other
medical malady they may suffer from.

b. **Higher Risks Plaintiffs**.

Mr. Graham sleeps in the dorm along with the other
Plaintiffs as well as with other detainees and parolees, and
whose bed is 3 and-a-half feet from the next bed –  not the 6
feet required by the CDC for proper social distancing – to
prevent the spreads of the Covid 19 virus. Mr. Graham is at a
higher risk of acquiring Covid 19 virus and succumbing to death
due to the lack of sufficient spacing between the beds as well
as from his pulmonary ailments.

10

Mr. Medina sleeps in the dorm with the other Plaintiffs as
well as with other detainees and parolees, and therefore cannot
practice social distancing to prevent the spreads of the Covid
19 virus, because unlike other people, his poor vision forces
him to closely interact and seek assistance from other people to
read medication labels, his mail and parole documents and other
materials to him, to complete forms, to locate items, and to
ambulate the jail. Thus, Mr. Medina cannot effectually practice
social distancing because he needs to interact with others in
close proximity for assistance with daily tasks, and this
exposes him to Covid 19 carriers and places him at risk of
acquiring said virus.

Mr. Medina is also experiencing respiratory problems upon
commencement of a new medication and which may be the result of
the medication itself as well as excessive weight gain or some
other recent medical condition. Mr. Medina is at a higher risk
of acquiring Covid 19 virus and succumbing to death due his
pulmonary ailment.

Mr. Medina sleeps in the dorm along with the other
Plaintiffs as well as with other detainees and parolees, and
whose bed is 3 and-a-half feet from the next bed – not the 6
feet required by the CDC for proper social distancing – to
prevent the spreads of the Covid 19 virus. Mr. Medina is at a
higher risk of acquiring Covid 19 virus due to the lack of
sufficient spacing between the beds as well as from his
pulmonary ailment.

Mr. Gomez is presently recuperating from the treatment of
radiation and chemotherapies. Both treatments are well known to
weaken the immune system during and post-treatment.

Mr. Gomez sleeps in the dorm with the other Plaintiffs as well as with other detainees and parolees, and therefore cannot practice social distancing to prevent the spreads of the Covid 19 virus, because unlike other people, his deafness and use of manual sign-language forces him to closely interact with other people. Moreover, Mr. Gomes' bed is 3 and-a-half feet from the next bed – not the 6 feet required by the CDC for proper social distancing – to prevent the spreads of the Covid 19 virus. Mr. Gomez is at a higher risk of acquiring Covid 19 virus due to the lack of sufficient spacing between the beds as well as from his weakened immune system.

Plaintiff  Carter has a urologic malady and he must use a catheter to void his bladder because he cannot self-void. In September of 2019, he was shot 3 times in his left leg. Hence, he still suffers from residual nerve damage, numbness, and tingling sensations throughout the entire left leg. Said leg occasional swells to unnatural proportions, whereby his shoe is unable to fit; or, he can experience sporadic weakness, whereas the leg gives out requiring Mr. Carter to use a wheelchair to ambulate.

Mr. Carter sleeps in the dorm along with the other Plaintiffs as well as with other detainees and parolees, and whose bed is 3 and-a-half feet from the next bed –  not the 6 feet required by the CDC for proper social distancing – to prevent the spreads of the Covid 19 virus. Mr. Carter is at a higher risk of acquiring Covid 19 virus due to the lack of sufficient spacing between the beds and succumbing to death due his coronary and pulmonary ailments.

Mr. Brown sleeps in the dorm with the other Plaintiffs as well as with other detainees and parolees, and whose bed is 3

and-a-half feet from the next bed – not the 6 feet required by the CDC for proper social distancing – to prevent the spreads of the Covid 19 virus. Mr. Brown is at a higher risk of acquiring Covid 19 virus due to the lack of sufficient spacing between the beds.

## C. Denial of Due Process.

Regarding the Plaintiffs' pending parole and criminal proceedings, they all will be denied a fair and meaningful opportunity to present defense with rebuttal documents and/or witnesses because memories fade, witnesses disappear and can even die before their cases are heard.

## D. Unconstitutional Jail Policy.

Defendant Smalls and City Corrections are denying the Plaintiffs full commissary purchases – and are only permitted to buy cosmetics – when they accrue an infraction, but before the Plaintiffs are served with a misbehavior report and without a disciplinary proceeding convening. This prehearing deprivation automatically presumes guilt absent an disciplinary proceeding and thus violates due process.

This pre-hearing commissary deprivation occurs on some occasion prior to a misbehavior report, also called an infraction, being authored let alone filed against the Plaintiffs for misconduct. Nonetheless, even if an misbehavior

report/infraction had been filed, the Plaintiffs had yet to be found guilty of the charged offense. Thus, the premature commissary deprivation violates due process in the absence of a disciplinary proceeding and a disposition of guilt.

This pre-hearing commissary deprivation was improperly enacted at NIC and is only being implemented at NIC. It is not a codified policy authorized by City Corrections or the City of New York nor a legislative body.[2]

Said pre-hearing deprivation is moreover statutorily impermissible, for notice thereof is not disseminated – verbally or in writing – to the Plaintiffs class, nor has it been published and posted throughout NIC as required by *Correction Law 138(1),(2)*. And even assuming that the prehearing commissary deprivation is legally permissible, pursuant to *Correction Law 138(3),* it still cannot be imposed unless the inmate had been given "actual notice" of all possible punitive sanctions and deprivations stemming from misconduct. Here, the deprivation derives from the mere allegation of misconduct. Absent written notice, the pre-hearing deprivation cannot be enforced. *NY Correction Law 138(5).*

The most fundamental controversy concerning the pre-hearing deprivation is that the deprivation stems from a mere conclusory allegation, which guilt or innocence has yet to be determined. The pre-hearing deprivation thus renders the disciplinary process a pro forma proceeding while stripping it of it judicial construed due process purpose.

---

[2] DOC central office has not approved this pre-hearing deprivation and is reason it is not being perpetuated at any other NYC jails.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court
grant the following relief and enter judgment in their favor:

A. Issue a declaratory judgment stating that:

1) the Defendants' pre-hearing commissary deprivations as
written, implemented, and enforced is unconstitutional

B. Issue an injunction ordering Defendants to:

1) provide the Plaintiffs and all other detainees, parolees
and sentenced inmates housed at North Infirmary Command with
rubberized surgical gloves, protective facial masks, body soap,
disinfectant, and cleaning materials for the housing unit and
entire facility and also provide them with hand sanitizer on a
daily basis until the Covid 19 global pandemic is exterminated
and no longer a threat to Plaintiffs health, safety and well
being.

2) provide Plaintiffs and all other detainees, parolees and
sentenced inmates housed at North Infirmary Command with bed
spacing and a living quarters that affords a minimum of 6 square
feet of distance and personal spacing;  if that is not possible
than Defendants shall immediately coordinate and arrange for
alternative housing arrangements that provides for 6 square feet
of personalized space in Plaintiffs sleeping and communal areas.

3) immediately return the C-PAP breathing devices to
Plaintiffs Azor-El, Fennell, Kelly, Barnar and Cole, and to all
others similarly situated; however, should the return of said
device pose a realistic threat – and not just a theoretical
threat – to the Plaintiffs' health, safety and well being, than

Defendants shall have a qualified person with personal firsthand knowledge state such in a sworn document. Moreover, should there exist a possible substitute for the C-PAP device than the Defendants shall immediately provide such substitute within 24 hours of the issuance of this Order.

4) prohibit any and all New York City Department of Corrections employees, agents contractors whom *claim to have been and/or whom have been* exposed to, or whom have tested positive for the Covid 10 virus, or any other contagious virus – whether symptomatic or not – are not be forced to return to the employ of New York City Department of Corrections unless that employee has written verifiable proof that he or she no longer has said virus and is not contagious.

C. Award Plaintiffs Medina, Gomez and Brown $25,000.00 in compensatory damages for pain, suffering and garden variety emotional damages against all Defendants;

D. Award Plaintiffs Azor-El, Fennell, Cole, Carter, Graham, Barnar and Kelly $50,000.00 in compensatory damages for pain, suffering and garden variety emotional damages against all Defendants;

E. Award Plaintiffs Medina, Gomez and Brown $5,000.00 in punitive damages against all Defendants;

F. Award Plaintiffs Azor-El, Fennell, Cole, Carter, Graham, Barnar and Kelly $10,000.00 in punitive damages against all Defendants;

G. Ordering such other and further relief as the Court may deem just, proper and equitable.

DATED: April 29, 2020


Pursuant to 28 U.S.C. §1746, we declare under penalty of perjury that the foregoing Complaint is true and correct.


Anthony Medina, Pro Se 2412000049

Jean Azor-El, pro se 4411905123

James Carter, pro se 1001900347

Dakwan Fennell, pro se 4411904639

Ronnie Cole, pro se 9801900423

Lance Kelly, pro se 3491808075

Ramon Gomez, pro se 3492000441

17

_Antonio Graham_

Antonio Graham, pro se 1411905134

_Maurice Barnar_

Maurice Barnar, pro se

_Anthony Brown_

Anthony Brown, pro se 3492000266

ANTHONY MEDINA 241200049
NORTH INFIRMARY COMMAND
1500 HAZEN ST.
EAST ELMHURST, NY 11370



RECEIVED
MAY 11 2020
PRO SE OFFICE



PRO SE CLERK
U.S. DISTRICT COURT
500 PEARL STREET
NEW YORK, NY 10007