UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

JEAN AZOR-EL, *et al.*,

                           *Plaintiffs*,

        -against-

CITY OF NEW YORK, *et al.*,

                         *Defendants*.

------------------------------------------------------------------------ x

**DECLARATION OF RICHARD REILLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

No. 20 CV 3650 (KPF)
No. 20 CV 3978 (KPF)
No. 20 CV 3980 (KPF)
No. 20 CV 3981 (KPF)
No. 20 CV 3982 (KPF)
No. 20 CV 3983 (KPF)
No. 20 CV 3985 (KPF)
No. 20 CV 3990 (KPF)

**RICHARD C. REILLY,** declares that the following statements are true, pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury:

1.     I am employed by the New York City Department of Correction ("DOC" or "the Department") as the Senior Stationary Engineer of Facility Maintenance and Repair Division and have held this position since July 2018. I have been employed by DOC since October 14, 2014, and hold a NYC Stationary Engineers License #20170.

2.     This affidavit is based on my personal knowledge of the Department's maintenance policies, especially those related to ventilation systems in the City's jails, and on information available to me in the course of my official duties.

3.     As the Senior Stationary Engineer, I am responsible for ensuring that the Department's facilities and operating systems adhere to city, state, and federal regulatory standards, as well as the Department's own internal policies, and that these systems remain operational and in good repair.

4.      I have been advised by counsel that certain inmates housed in our North Infirmary Command ("NIC") facility, challenge environmental conditions and allege that the Department is not properly responding to the COVID-19 pandemic.  I submit this declaration to address their allegations concerning the adequacy of our ventilation systems.

5.      I have been informed by counsel that Plaintiffs are broadly asserting that our ventilation systems are inadequate, that we should have isolation rooms with negative air pressure, and that we should rely on "strategic filter placement."  See Declaration of Ryan Herrington at ¶¶ 25-27 (ECF Doc. No. 38-6).

6.      As a threshold matter, in recent years, the Department has completed a remediation plan of ventilation, pursuant to a 2009 Court order entered by the late Judge Baer in the ongoing class action, Benjamin v. Brann, 75-cv-0373 (LAP).

7.      In conjunction with that plan, NIC was closed in 2012 and underwent a thorough remediation, including installation of air conditioning in the building; the main NIC building is the oldest jail building in our system, dating from the 1930s.

8.      As an additional threshold matter, the Department has 98 isolation rooms with negative air pressure rooms in a Communicable Disease Unit ("CDU") at the West Facility, which is part of NIC.  I am aware that major urban hospitals in the City of New York each have only a handful of such rooms.

9.      As to filtration issues, the air filters were upgraded from MERV 8 to a MERV 13 and the fans were put into 100% fresh air intake._The filters used by the Department in NIC are MERV 13 and are consistent with guidance given to correctional facilities concerning filtration and air quality.  I trust that this addresses Dr. Herrington's concerns about "strategic filter placement."

10.     I also understand that Plaintiffs allege that our vents are dirty and inefficient and have provided findings from DOC inspections to that effect. See Summary at p. 3 (ECF Doc. No. 38-10.) I understand that these summaries are made by the Benjamin Court Monitor from DOC inspection findings.

11.     These inspections cover only a portion of a facility, and I note that only four specific findings were made in NIC, where Plaintiffs are housed. One finding of "no vent" was in a storage area. Two of the three cells with citations were vacant, and the one occupied cell had a dirty vent.

12.     As to that occupied cell, I would expect it to be remediated shortly after the finding. DOC's environmental policies provide that unsatisfactory conditions are remedied during the tour in which the conditions are observed, or within seven business days. See DOC Directive 3900-R, at III(e)(1) (ECF Doc. No. 38-7 at p. 88).

13.     Additionally, the presence of dust and the like on vents has no significant effect on air quality.

## Conclusion

14.     From the beginning of 2020, the Department has been well aware of the dangers of COVID-19, and has been focused on keeping the jails safe, clean, and sanitary. As discussed above, my staff and I have been diligent on addressing the ventilation needs of the DOC, and will continue to do so.

Dated:      Queens, New York
            January 29, 2021

RICHARD C. REILLY