

**JAMES E. JOHNSON**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**DAVID S. THAYER**
*Assistant Corporation Counsel*
t: (212) 356-2649
f: (212) 356-1148
e: dthayer@law.nyc.gov

February 19, 2021

*Via ECF*

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
40 Foley Square
New York, NY 10007

> Re: <u>**Azor-El**, *et al.* **v. City of New York**, *et al.*</u>, Case Nos. 20 CV 3650, 20 CV 3978, 20 CV 3979, 20 CV 3980, 20 CV 3981, 20 CV 3982, 20 CV 3983, 20 CV 3984, 20 CV 3985, and 20 CV 3990

Dear Judge Failla:

      We represent the Defendants City of New York and Kisa Smalls (collectively, "Defendants" or "the City") in the above-referenced consolidated actions. We write in response to Plaintiffs' letter, filed on ECF afterhours on February 18, 2021, and characterized as a "follow up on several matters discussed at last week's argument." (ECF Doc. No. 35.) While we are uncertain of the propriety of filing such a letter literally on the eve of the Court's decision on the preliminary injunction motion, we would like to at least briefly respond to some of the assertions contained in Plaintiffs' letter.

*Rikers Deaths in Custody*

      The suggestion that there are under-inclusive death totals has not been a theory of Plaintiffs' case to date, and we are uncertain why counsel brings this to the attention of the Court before discussing it with us. If counsel believes this is part of their action, we will be happy to discuss the implications on the discovery to come; it does not appear to be germane to the motion before the Court.

*Collective Bargaining*

In providing the recent Second Circuit decision in the N.Y. Civil Rights Law § 50-a law enforcement disclosure case, Plaintiffs appear to misstate Defendants' position. At oral argument, Defendants did not assert that New York's collective bargaining laws forbid a federal court from ordering a remedy. Defendants' point was instead that, because of the collective bargaining laws, the City of New York would likely have to negotiate a mandate that affects workplace conditions, and thus as a matter of equity, those employees should have a voice in the crafting of any order affecting their employment.

*Soap*

Defendants' counsel requested that the New York City Department of Correction ("DOC") look into the availability of soap in the housing areas at the North Infirmary Command ("NIC") where the Plaintiffs are housed and was about to inform Plaintiffs' counsel that the availability of soap was confirmed in Dorms 1, 2, 3, and 4 at NIC, when Plaintiffs' letter to the Court was filed.

Separately, on the day of oral argument, Defendants' counsel reached out to Plaintiffs' counsel to, *inter alia*, further investigate the complaints regarding insufficient soap that Plaintiffs' counsel had received and sought additional details about the facilities and housing areas of persons from whom Plaintiffs' counsel had received complaints. To date, Plaintiffs' counsel has not responded to these enquiries.

As to the new allegation by Mr. Barnar that cleaning supplies at NIC have been locked up, that is in fact the procedure and is discussed in Deputy Commissioner Feeney's deposition, (Feeney Depo. Tr. 39:11-14, *attached as* Ex. D *to* Pls. Mem. of Law Supp. Mot. for Prelim. Inj., ECF No. 67-4); the supply closet is open upon request of any inmate needing supplies.

*Retaliation*

The City is concerned about the sudden suggestion of "retaliation." Just about ten minutes before the filing of Plaintiffs' letter, Defendants' counsel received an e-mail from Plaintiffs' counsel asserting that a possible act of retaliation occurred the day after oral argument, *i.e.*, the locking of the supply closet. The City is naturally concerned about any suggestion of retaliation, but Defendants' counsel are puzzled why Plaintiffs' counsel waited seven days to communicate this allegation of retaliation, instead choosing to raise it afterhours and on the eve of the Court's decision. Although it seems counter-intuitive for DOC staff to retaliate by restricting access to cleaning supplies—when staff is similarly situated in terms of safety arising from a sanitary environment—we will continue to investigate this allegation.

More discouraging is an apparent penchant for precipitous and accusatory communications to the Court before Plaintiffs' counsel, as a professional courtesy, presents issues to Defendants' counsel to investigate. An appropriate resolution of this action will depend in no small part on the cooperation between counsel. While we appreciate the advocacy and zeal of Plaintiffs' counsel, and while we have a perfectly congenial relationship, we would encourage greater communication with Defendants' counsel before seeking judicial intervention. To that

end, we have also previously advised Plaintiffs' counsel that they may come to the Law Department directly with concerns, and we will raise those concerns with appropriate DOC staff. Meanwhile, there remain many internal avenues of relief for inmates or their representatives to raise concerns about things such as soap availability. In short, informal dispute resolution is a hallmark of practice in this Court, and we urge counsel to avail themselves of it. We do not wish to burden the Court unnecessarily, and so our door is open.

We appreciate the Court's attention to this matter, and we look forward to meeting with the Court and counsel later this morning.

Respectfully yours,

/s/ David S. Thayer

David S. Thayer
*Assistant Corporation Counsel*

/s/ Chlarens Orsland

Chlarens Orsland
*Assistant Corporation Counsel*

cc: ***Via ECF***
E.E. Keenan, Esq.
Keenan & Bhatia, LLC
90 Broad Street
Ste. 200
New York, NY 10004
*Counsel for Plaintiffs*