UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEAN AZOR-EL, ANTHONY MEDINA, RAMON GOMEZ, RONNIE COLE, DAKWAN FENNELL, JAMES CARTER, MAURICE BARNAR, LANCE KELLY, and WILLIAM CLANTON, <br><br>      Plaintiffs, <br><br>      -v.- <br><br> CITY OF NEW YORK, CYNTHIA BRANN, VINCENT SCHIRALDI, LOUIS MOLINA, HAZEL JENNINGS, KISA SMALLS, and WARDENS OF DOC DETENTION FACILITIES, <br><br>      Defendants. | 20 Civ. 3650 (KPF) <br> 20 Civ. 3978 (KPF) <br> 20 Civ. 3980 (KPF) <br> 20 Civ. 3981 (KPF) <br> 20 Civ. 3982 (KPF) <br> 20 Civ. 3983 (KPF) <br> 20 Civ. 3985 (KPF) <br> 20 Civ. 3990 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiffs, former Rikers Island detainees, sued the City of New York (the "City"); three former Commissioners of Correction, Cynthia Brann, Vincent Schiraldi, and Louis Molina; former New York City Department of Correction ("DOC") Chief Hazel Jennings; the former Warden of North Infirmary Command ("NIC") at Rikers Island, Kisa Smalls; and various Wardens of DOC detention facilities during the period from March 1, 2020, through the present (the "Wardens," and collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, alleging that the conditions of Plaintiffs' confinement violated their constitutional rights in light of the severe health risks posed by the COVID-19 pandemic. Plaintiffs also brought related federal claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (the "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797, for Defendants' alleged failure to protect medically vulnerable individuals, as well as state-law claims

for negligence and for discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-134 (the "NYCHRL"). Plaintiffs sought, in the alternative, a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.

Now before the Court is Plaintiffs' motion for class certification, approval of class representatives, and appointment of class counsel pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' motion for class certification, and grants in full Plaintiffs' other requests.

## BACKGROUND[2]

### A. Factual Background

#### 1. The Parties

Plaintiffs in this action were in the custody of the DOC at Rikers Island, New York City's largest jail complex, at some point during the COVID-19

---

[1] This motion for class certification is filed by plaintiffs in eight consolidated cases. *See Azor-El* v. *City of New York*, No. 20 Civ. 3650 (KPF), Dkt. #193; *Barnar* v. *City of New York*, No. 20 Civ. 3978 (KPF), Dkt. #144; *Carter* v. *City of New York*, No. 20 Civ. 3980 (KPF), Dkt. #144; *Cole* v. *City of New York*, No. 20 Civ. 3981 (KPF), Dkt. #118; *Fennell* v. *City of New York*, No. 20 Civ. 3982 (KPF), Dkt. #142; *Gomez* v. *City of New York*, No. 20 Civ. 3983 (KPF), Dkt. #141; *Medina* v. *City of New York*, No. 20 Civ. 3985 (KPF), Dkt. #172; *Kelly* v. *City of New York*, No. 20 Civ. 3990 (KPF), Dkt. #142. For ease of reference, citations in this Opinion are to the docket in the lead case, *Azor-El* v. *City of New York*, No. 20 Civ. 3650 (KPF), unless otherwise specified. In addition, for convenience, the Court will refer to these litigations collectively in the singular, *e.g.*, "this action."

[2] This Opinion draws its facts from the Second Amended Complaint ("SAC" (Dkt. #174)), which is the operative pleading in this case, and from the parties' submissions in connection with Plaintiffs' motion for class certification. These submissions include: (i) the Declaration of Edward Keenan in support of Plaintiffs' motion and the exhibits

pandemic.[3]  Plaintiffs, as well as the circumstances of their detention during

the relevant time period, are summarized below:

- Plaintiff Jean Azor-El was previously detained at NIC.
(SAC ¶ 9).  Mr. Azor-El suffers from obstructive sleep
apnea ("OSA"), which requires him to use a continuous

attached thereto ("Keenan Decl." (Dkt. #194-195)), including (a) the transcript of the
May 13, 2021 deposition of Emily Turner ("Turner Dep." (Dkt. #194-1)), (b) the
transcript of the May 24, 2021 deposition of Ross MacDonald ("MacDonald Dep." (Dkt.
#194-2)), (c) the transcript of the May 26, 2021 deposition of Patricia Feeney ("Feeney
Dep. I" (Dkt. #194-3)), (d) the transcript of the November 10, 2020 deposition of Patricia
Feeney ("Feeney Dep. II" (Dkt. #194-4)), (e) the Fall/Winter 2020 Issue of CorrectCare
Magazine (Dkt. #194-5), (f) a joint letter submitted by the parties in this action dated
June 4, 2021 ((Dkt. #. #194-6), (g) the transcript of the oral argument in this action
dated February 10, 2021 (Dkt. #194-7), (h) New York City Department of Correction
("DOC") Directive 2269R-B (Dkt. #195-1), (i) the transcript of the April 26, 2021
deposition of Plaintiff Jean Azor-El ("Azor-El Dep." (Dkt. #195-2)), (j) the transcript of
the April 23, 2021 deposition of Plaintiff Maurice Barnar ("Barnar Dep." (Dkt. #195-3)),
(k) the transcript of the April 23, 2021 deposition of Plaintiff Ronnie Cole ("Cole Dep."
(Dkt. #195-4)), (l) the transcript of the April 26, 2021 deposition of Plaintiff William
Clanton ("Clanton Dep." (Dkt. #195-5)), (m) an email from Bobby Cohen, dated March
31, 2021 (Dkt. #195-6), (n) DOC Directive 2269R-A (Dkt. #195-7), (o) the transcript of
the April 28, 2021 deposition of Chief Becky Scott ("Scott Dep. I" (Dkt. #195-8)),
(p) Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a
Preliminary Injunction, filed in this action on February 1, 2021 (Dkt. #195-9), (q) a
letter from Steven M. Safyer, M.D. to the Board of Correction (the "BOC"), dated
January 29, 2021 (Dkt. #195-10), (r) the transcript of the May 27, 2021 deposition of
Chief Becky Scott ("Scott Dep. II" (Dkt. #195-11)), (s) the BOC's Statement on Recent
Suicides in the New York City Jails, dated September 1, 2021 (Dkt. #195-12), (t) Office
of Compliance Consultants' "Report on Environmental Conditions in NYC Jails" (Dkt.
#195-13), (u) the BOC's Weekly COVID-19 Update for the Week of October 16-22, 2021
(Dkt. #195-14), (v) the letter from Ross MacDonald, MD to Keith Powers, New York City
Council, dated September 10, 2021 (Dkt. #195-15), (w) the expert report of Sara Kariko,
MD, MPH ("Kariko Report" (Dkt. #195-16)), (x) the Declaration of Mark Leymon, Ph.D.
(Dkt. #195-17), (y) the transcript of the February 27, 2023 deposition of Zachary Rosner
("Rosner Dep." (Dkt. #195-18)), and (z) the Opinion and Order dated April 1, 2022,
certifying classes in *Maney* v. *Oregon*, No. 20 Civ. 570 (SB) (D. Or.) (Dkt. #195-19);
(ii) the Declaration of Sherrie Rembert in opposition to Plaintiffs' motion for class
certification ("Rembert Decl." (Dkt. #202)); and (iii) the Declaration of Antonin Gajtani in
opposition to Plaintiffs' motion for class certification ("Gajtani Decl." (Dkt. #203)).

For ease of reference, the Court refers to Plaintiffs' memorandum of law in support of
their motion for class certification as "Pl. Br." (Dkt. #199); to Defendants' memorandum
of law in opposition to Plaintiffs' motion as "Def. Opp." (Dkt. #204); and to Plaintiffs'
reply memorandum as "Pl. Reply" (Dkt. #209).

[3]    None of the Plaintiffs is currently in DOC custody.  According to Defendants, all
Plaintiffs are either in New York State custody or have been released from custody.
(Def. Opp. 4; Gajtani Decl. ¶ 4 (listing the current detention status of all named
Plaintiffs and showing that all but Plaintiff Carter, who has been released, are in state
custody)).

positive airway pressure ("CPAP") machine while sleeping. (*Id.* ¶ 57).

- Plaintiff Anthony Medina was previously detained at Rikers Island. (*Id.* ¶ 10). Mr. Medina is legally blind and neuropathically disabled. (*Id.* ¶ 60).

- Plaintiff Ramon Gomez was previously detained at NIC. (*Id.* ¶ 11, 61). Mr. Gomez is deaf and mute, and he is currently in remission from bone cancer. (*Id.* ¶ 61). While detained at NIC, Mr. Gomez tested positive for COVID-19 twice. (*Id.*).

- Plaintiff Ronnie Cole was previously detained at NIC. (*Id.* ¶ 12). Mr. Cole is wheelchair-bound and suffers from sleep apnea, requiring his use of a CPAP machine. (*Id.* ¶ 63).

- Plaintiff Dakwan Fennell was previously detained at Rikers Island. (*Id.* ¶ 13). Mr. Fennell suffers from diabetes as well as OSA, the latter of which requires him to use a CPAP machine to sleep. (*Id.* ¶ 58).

- Plaintiff James Carter was previously detained at NIC. (*Id.* ¶ 14). Mr. Carter suffers from asthma, a heart murmur, a urologic bladder, left leg numbness and weakness, and cervical spine injuries encompassing a slipped disc. (*Id.* ¶ 62). While detained at NIC, Mr. Carter tested positive for COVID-19. (*Id.*).

- Plaintiff Maurice Barnar was previously detained at NIC. (*Id.* ¶ 15). Mr. Barnar suffers from OSA and requires the use of a CPAP machine. (*Id.* ¶ 59). Furthermore, Mr. Barnar reports that he has antibodies for COVID-19. (*Id.*; *see also* Barnar Dep. 29:21-25 (testifying that he tested positive for COVID antibodies in June 2020)).

- Plaintiff Lance Kelly was previously detained at Rikers Island. (SAC ¶ 16). Mr. Kelly suffers from chronic obstructive pulmonary disease, asthma, and sleep apnea. He wears hearing aids, has chronic back pain, and requires the use of a CPAP machine. (*Id.* ¶ 64).

▪    Plaintiff William Clanton was detained at the Vernon C. Bain Center ("VCBC") and the Eric M. Taylor Center ("EMTC").  (*Id.* ¶ 17).[4]  Mr. Clanton suffers from high blood pressure and sudden changes in blood pressure, which he attributes to his contraction of COVID-19 while he was detained at VCBC.  (SAC ¶ 65).

Plaintiffs allege that "[m]ost [of them] are at high risk of serious illness or death if they contract (or re-contract) COVID-19."  (*Id.* ¶ 56).

Plaintiffs bring this action against the City of New York, in addition to several individuals associated with the City's correctional and detention facilities during the pandemic.  Specifically, Plaintiffs name as Defendants three former DOC Commissioners, Cynthia Brann, Vincent Schiraldi, and Louis Molina, all of whom are alleged to have had policymaking and enforcement authority over DOC, and all of whom Plaintiffs have sued in their individual and official capacities.  (SAC ¶¶ 19-21).[5]  Plaintiffs also bring suit against Hazel Jennings, who served as DOC's Chief of Department until July 2, 2021 (*id.* ¶ 22), and Kisa Smalls, who served as Warden of NIC before being reassigned in June 2020 (*id.* ¶ 23), also in their individual and official capacities.  Finally, Plaintiffs have sued the wardens of several DOC detention facilities that held detainees during the COVID-19 pandemic.  (*Id.* ¶ 24).  This group of Defendants includes, but is not limited to, the fourteen individuals

---

[4]    The Vernon C. Bain Center, which was anchored in the Bronx, has since been closed. (Rembert Decl. ¶ 6).

[5]    The SAC lists Louis Molina as the City's current Commissioner of Correction. (SAC ¶ 1). Since that filing, Mr. Molina has left that role and currently serves as Commissioner of the New York City Department of Citywide Administrative Services.  The current Commissioner of Correction is Lynelle Maginley-Liddie.

specifically named in the Second Amended Complaint (or "SAC"), all of whom
have been sued in their individual capacities.  (*Id.*).

### 2. DOC's Response to the COVID-19 Pandemic

### a. COVID-19 Risks in Carceral Facilities

An overall introduction into the devastating effects of the COVID-19
pandemic is hardly necessary at this point, as the widespread effects of the
virus are now all too familiar.  However, and importantly for the current
motion, not all individuals are equally at risk.  It is well established that older
individuals and individuals with pre-existing health conditions are at
significantly greater risk of developing severe complications or death if they
contract COVID-19.  (SAC ¶¶ 32-37).  The effects of COVID-19 can be
particularly devastating in correctional and detention facilities, where the
inability to implement social distancing protocols, the shared nature of spaces,
and the transience of both staff and detainees, facilitate the transmission of the
virus.  (*Id.* ¶ 39; *see also* MacDonald Dep. 12:1-19 (explaining that the risk of
COVID-19 is higher in a "correctional setting" due to the "congregate living")).

In light of the particular risks associated with COVID-19 in correctional
and detention facilities, the Centers for Disease Control and Prevention (the
"CDC") recommended throughout the pandemic that facilities provide
incarcerated individuals with certain hygiene supplies, including masks,
cleaning products, and alcohol-based hand sanitizer, to help mitigate risk.
(SAC ¶¶ 46-47).  The CDC also recommended a series of measures that
facilities could implement to limit the spread of COVID-19, such as social

distancing, mask mandates, and intensified cleaning procedures. (*Id.* ¶¶ 48-51). As with the general population, the CDC also recommended routine COVID-19 testing and quarantining for all persons who exhibit symptoms of the virus. (*Id.* ¶¶ 52-55).

Plaintiffs filed this action to challenge the quality of Defendants' response to the pandemic in light of the established risks and known mitigation strategies. Specifically, Plaintiffs bring this action under 42 U.S.C. § 1983, alleging that Defendants' failure to implement proper measures at Rikers Island infringed on Plaintiffs' rights under the Eighth and Fourteenth Amendments to the U.S. Constitution. (SAC ¶ 241). Plaintiffs also bring claims for violations of additional federal statutes, including the Rehabilitation Act (*id.* ¶ 217) and the ADA (*id.* ¶ 225), as well as state-law claims for negligence (*id.* ¶ 255) and for age and disability discrimination under the NYSHRL and the NYCHRL (*id.* ¶¶ 263, 271, 280, 289). Plaintiffs seek, in the alternative, a writ of habeas corpus. (*Id.* ¶ 245). Before addressing the merits of Plaintiffs' certification motion, the Court pauses to outline the factual allegations underlying Plaintiffs' claims.

### b.    Rikers Island's Response to COVID-19

New York State reported its first case of COVID-19 in March 2020. (SAC ¶ 67). Approximately one month later, Rikers Island reported 180 cases of COVID-19. (*Id.* ¶ 68). This reflected an infection rate of 3.91%, as compared to a nationwide infection rate of 0.053%. (*Id.*). Just as in the surrounding community, the actual number of COVID-19 infections in the City's

correctional and detention facilities fluctuated over the course of the pandemic;
however, Plaintiffs allege that the infection rates within Rikers Island were
consistently higher than the general infection rate in the United States
throughout 2020.  (*Id.* ¶¶ 68-71).  Based on data provided by the BOC, four
individuals in DOC custody died from COVID-19 (*id.* ¶ 75), although Plaintiffs
allege that the actual number is greater (Pl. Br. 12 (citing MacDonald
Dep. 49:13-50:6)).

At bottom, Plaintiffs allege that, despite the clear risks imposed by the
pandemic, Defendants failed to institute appropriate safety measures to protect
detainees from contracting COVID-19.  In this regard, Plaintiffs challenge four
categories of COVID-19 policies that DOC implemented at Rikers Island:
(i) masking; (ii) social distancing; (iii) cleaning and sanitation; and (iv) testing.
According to Plaintiffs, Defendants not only implemented inadequate policies,
but also failed to impose additional, reasonable measures that would have
reduced the risk of harm.  The Court discusses what Defendants did, and failed
to do, in the remainder of this section.

### i.    Masking Policy

As a first measure to respond to the threat posed by COVID-19, on
March 22, 2020, DOC issued a directive allowing — but not mandating —
correctional officers and staff to don their own face masks at work.  (SAC ¶ 82).
In April 2020, DOC mandated that all officers and staff wear face masks in
congregated settings and be in possession of latex gloves.  (*Id.* ¶ 83).  However,
Plaintiffs allege that DOC did not enforce this directive and, as such, put the

population of Rikers Island at risk.  (*Id.* ¶¶ 85, 170).  According to Plaintiffs, correctional officers and staff either neglected to wear masks or did so improperly throughout the COVID-19 pandemic.  (*Id.* ¶¶ 86-91; *see also* Azor-El Dep. 9:4-19 (explaining how the majority of Rikers Island staff either failed to wear masks or wore the masks "under th[eir] chin[s]")).  This failure is alleged to have impacted detainees in a variety of settings; officers were seen escorting individuals without masks or gloves, and officers also failed to wear masks and gloves when distributing food.  (SAC ¶¶ 88-93, 171).  The problem was further exacerbated by DOC's failure to meaningfully enforce disciplinary measures on those correctional officers who failed to properly wear masks.  (*Id.* ¶ 176).

During certain portions of the pandemic, the City maintained a video monitoring program, which involved management and fellow correctional officers at the Compliance and Safety Center monitoring live video feeds from DOC facilities for mask compliance.  (SAC ¶ 173; *see also* Feeney Dep. I 6:6-25 (explaining that the Compliance and Safety Center would "call the individual staff member and remind them to put on their mask" if they were seen not wearing one)).  However, this program was phased out in March 2021, resulting in a lack of contemporaneous monitoring.  (SAC ¶ 174).  By mid-2021, those Plaintiffs who remained incarcerated at DOC facilities generally observed that only about 40% of correctional officers wore masks properly.  (*Id.* ¶ 178; *see also* Clanton Dep. 13:25-15:18 (describing officers as "very negligent[]," with only about 30% wearing masks); Keenan Decl., Ex. M (statement from member

of BOC that "[m]ask wearing by correctional staff at all levels was extremely
inconsistent, disturbingly so")).

### ii.        Social Distancing Policy

As Plaintiffs acknowledge, the congregate nature of correctional facilities
imposes inherent limitations on the ability to social distance.  (SAC ¶ 158).
Even so, Plaintiffs argue that Defendants failed to take reasonable steps to
promote social distancing.  (*Id.* ¶ 160).  As a general matter, Plaintiffs allege
that Defendants failed to reduce the overall population density at Rikers Island
in a manner that would have allowed for increased distancing.  (*Id.* ¶¶ 162-
164).  While the City issued public statements during the pandemic indicating
that congestion within correctional facilities had been significantly reduced,
Plaintiffs allege that such statements were misleading and, in the later months
of 2020, Rikers Island was operating at near-pre-pandemic levels.  (*Id.* ¶¶ 104-
110, 164; *see also* Keenan Decl., Ex. V ("MacDonald Letter") at 2 (describing
how "[d]ecarceration efforts, which are a proven public health response to
COVID-19, have not been meaningfully pursued")).

Plaintiffs also allege that the specific facilities at Rikers Island did not
allow for proper social distancing.  For instance, many incarcerated individuals
resided in dormitory-style settings, with less than six feet of space between
beds, and shared high-use areas, such as phone booths and bathrooms, that
remained congested during the pandemic.  (*See* SAC ¶¶ 99-101, 166; Clanton
Dep. 11:17-25 (describing the "very, very small units" at VCBC, where the beds
are "connected head to head, and head to foot")).

10

###                    iii.          Cleaning and Sanitation Policy

As a third basis for their constitutional claims, Plaintiffs allege that the City failed to increase the rate or the intensity of sanitation practices at Rikers Island facilities, and instead allowed the burden to fall on incarcerated individuals who were given limited, inutile supplies to sanitize their living quarters. (SAC ¶¶ 121, 147-150). For example, Plaintiffs allege that DOC and Rikers Island failed to follow a City directive regarding televisits, which directive required facilities to clean and sanitize conference booths before calls. (*Id.* ¶ 113). Instead, Rikers Island required incarcerated individuals to sanitize and clean the phones and booths themselves. (*Id.* ¶ 114). Worse yet, while alcohol wipes were distributed near the phones at one point, such distribution of supplies ceased after May 2020. (*Id.* ¶ 149; Azor-El Dep. 39:17-40:17 (explaining the lack of sanitation supplies available to clean the phones)). Even during the height of the pandemic, no additional staff were employed or designated to clean high-touch surfaces or high-traffic areas. (SAC ¶ 150).

According to Plaintiffs, these problems were compounded by DOC's failure to supply detainees with hand sanitizer instead of bar soap. (SAC ¶¶ 123-126). Despite the affordability and accessibility of hand sanitizer, Plaintiffs allege that the City refused to purchase or distribute the product out of fear that it would be weaponized or lit on fire, or that it would be consumed. (*Id.* ¶ 140; MacDonald Dep. 78:9-18 (explaining that he "encouraged" New York City Health & Hospitals' Correctional Health Services to make hand sanitizer available, but was refused due to the "security risk")). Plaintiffs posit that this

fear was unwarranted, as the City has not pointed to any instance in which a detainee engaged in violent or disruptive behavior with hand sanitizer. (SAC ¶ 142). What is more, had these fears been legitimate, Plaintiffs offer that DOC could have mitigated any risk through the use of foam-based hand sanitizer. (*Id.* ¶ 144).

### iv.  Testing Policy

According to Plaintiffs, COVID-19 was most likely to spread at Rikers Island via staff members, who entered and exited the complex on a daily basis and interacted with the general public in their off-hours. (SAC ¶ 152). Despite this fact, and contrary to CDC recommendations, Plaintiffs allege that DOC failed to implement a broad testing program for its officers and staff. (*Id.* ¶¶ 127-130). New staff members were not required to isolate or quarantine, and there was no mandate for regular testing of staff. (*Id.* ¶¶ 129, 154; *see also* Keenan Decl., Ex. Q at 1 (describing the "rapid increase in cases of COVID-19 in [New York] jails" and suggesting increased testing to "detect in jail transmission before it becomes widespread")).

### v.  Other Concerns

The SAC also discusses several additional policies that Defendants supposedly failed to implement, although these allegations are less developed. For example, Plaintiffs point out that Rikers Island has not installed any air filters, which could have provided increased ventilation throughout the complexes. (SAC ¶¶ 192-193). Plaintiffs also raise staff-related issues, including staff shortages, which allegedly heightened the threats posed to

incarcerated individuals, inasmuch as there were fewer correctional officers to maintain order in the facilities. (*Id.* ¶ 198; *see also* MacDonald Letter 1 (describing the "collapse in basic jail operations" that in part resulted from the "[u]navailability of staff")). Finally, on the specific issue of vaccines, Plaintiffs allege that the City "dragged its feet on implementing a vaccine mandate"; while a mandate was imposed for other City employees effective October 29, 2021, correctional officers were exempted from this mandate until December 1, 2021. (SAC ¶¶ 182-184).[6]

## B.    Procedural Background

The procedural history in this case, dating as it does back to 2020, is extensive. Plaintiffs Jean Azor-El, Anthony Medina, James Carter, Dakwan Fennell, Ronnie Cole, Lance Kelly, Ramon Gomez, Antonio Graham, Maurice Barnar, and Anthony Brown commenced this action with the *pro se* filing of a purported class action complaint on May 11, 2020. (Dkt. #2). By Order dated May 18, 2020, Plaintiffs' claims were severed, pursuant to Federal Rule of Civil Procedure 21, and the Court directed the Clerk of Court to open new actions for each plaintiff. (Dkt. #20). This Court subsequently consolidated the cases, pursuant to Rule 42 of the Federal Rules of Civil Procedure and granted Plaintiffs' motion for appointment of *pro bono* counsel. (Dkt. #27).

---

[6]    Some of Plaintiffs' claims, while disturbing, do not specifically relate to the COVID-19 pandemic. For example, Plaintiffs challenge certain general conditions at Rikers Island, such as the quality of meals (SAC ¶ 197) and the physical conditions of the facilities (*id.* ¶ 195).

On September 9, 2020, Defendants filed a pre-motion letter, expressing their intention to file a motion to dismiss.  (Dkt. #44).  On October 6, 2020, the Court held a conference, setting a deadline for Plaintiffs to file an amended complaint and for Defendants to inform the Court of their intention to file a motion to dismiss.  (October 6, 2020 Minute Entry).  On November 24, 2020, Plaintiffs filed an amended complaint (the "FAC").  (Dkt. #52).  Pursuant to the Court's Order, Defendants subsequently informed the Court that they would not proceed with a motion to dismiss (Dkt. #61), and instead filed an answer to the FAC on January 21, 2021 (Dkt. #64).

On January 22, 2021, Plaintiffs filed their first request for a preliminary injunction, requesting that the Court command Defendant City of New York to implement certain safety protocols related to the COVID-19 pandemic.  (Dkt. #65-67).  The Court heard oral argument on this motion on February 10, 2021. (*See* February 10, 2021 Minute Entry; Dkt. #89 (transcript)).  Thereafter, on February 19, 2021, the Court rendered an oral decision, denying Plaintiffs' motion but authorizing discovery for the purpose of gathering information regarding the extent to which DOC was adhering to its stated policies on mask wearing and the provision of cleaning supplies at Rikers Island.  (Dkt. #88 (order), 93 (transcript)).

Plaintiffs renewed their motion for a preliminary injunction on July 9, 2021, requesting the appointment of a Special Master with power to monitor the City's compliance with the law and its own policies, and further commanding the City to implement certain safety protocols.  (Dkt. #119-120).

14

The Court heard oral argument on the renewed motion on November 19, 2021, after which the Court directed the parties to file supplemental briefing. (Dkt. #139 (order), 141 (transcript)). In an oral decision issued on March 16, 2022, the Court once again denied Plaintiffs' motion for a preliminary injunction, finding that the record did not support the conclusion that Defendants evinced conscious neglect — of a constitutional dimension — of the dangers of the pandemic. (Dkt. #147 (order), 157 (transcript)).

Plaintiffs filed the SAC, the operative complaint in this action, on November 15, 2022. (Dkt. #174). Defendants then filed their answer to the SAC on November 15, 2022. (Dkt. #175). After requesting and receiving an extension to the discovery deadline, the parties completed class certification discovery on March 16, 2023. (Dkt. #177). On March 21, 2023, the Court held a pretrial conference, during which the Court set deadlines for the parties to complete expert discovery and for Plaintiffs to file their anticipated motion for class certification. (March 21, 2023 Minute Entry).

Plaintiffs filed their motion for class certification on October 13, 2023. (Dkt. #193-196). Plaintiffs subsequently requested leave from the Court to file an amended memorandum of law in support of their motion for class certification, which request the Court granted. (Dkt. #198). Plaintiffs filed their amended memorandum of law on October 16, 2023. (Dkt. #199). Defendants filed their opposition to Plaintiffs' motion on December 1, 2023. (Dkt. #204). Finally, Plaintiffs filed their reply on January 10, 2024. (Dkt. #209).

**DISCUSSION**

**A.    Applicable Law**

Class certification is governed by Federal Rule of Civil Procedure 23.   "[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met[.]"  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 27 (2d Cir. 2006).  Furthermore, the party seeking certification must establish that the proposed class meets all the requirements of Rule 23 by a "preponderance of the evidence."  *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Accordingly, *first*, under Rule 23(a), the moving party must make a threshold showing that:

> [i] the class is so numerous that joinder of all members is impracticable; [ii] there are questions of law or fact common to the class; [iii] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [iv] the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These Rule 23(a) prerequisites — commonly referred to as numerosity, commonality, typicality, and adequacy — must be satisfied after "rigorous analysis" that examines "the facts of the dispute, [and] not merely the pleadings."  *Floyd* v. *City of New York*, 283 F.R.D. 153, 160 (S.D.N.Y. 2012) (citing *Wal-Mart* v. *Dukes*, 564 U.S. 338, 351 (2011)); *see generally Amgen Inc.* v. *Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 460 (2013).  In addition to Rule 23(a)'s explicit textual requirements, the Second Circuit also recognizes an implicit "ascertainability" requirement, whereby the proposed class must be "defined using objective criteria that establish a membership with definite

boundaries." *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG), 2021 WL 4077942, at *5 (S.D.N.Y. Sept. 8, 2021) (quoting *In re Petrobras Secs.*, 862 F.3d 250, 257 (2d Cir. 2017)).  Ascertainability is considered a "modest threshold and will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* (internal citation omitted).

*Second*, if the threshold requirements of Rule 23(a) are met, a plaintiff must also establish that the proposed class falls into one of the three categories set forth in Rule 23(b).  Here, Plaintiffs seek to certify a total of three classes under Rule 23(b)(2) and (b)(3).  (Pl. Br. 20-23).  Under Rule 23(b)(2), class certification is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The certification of a class for injunctive relief is only appropriate if "a single injunction … would provide relief to each member of the class."  *Sykes* v. *Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (quoting *Dukes*, 564 U.S. at 360).  Rule 23(b)(3), on the other hand, permits a class action to proceed "if the court finds [i] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [ii] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance requirement is satisfied if (i) resolution of any material "legal or factual questions … can be achieved through generalized proof," and (ii) "these [common] issues are more

substantial than the issues subject only to individualized proof." *Mazzei* v.
*Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (quoting *Myers*, 624 F.3d at
547).

"Ultimately, the district court has broad discretion in deciding how and
whether to certify a class, arising from its 'inherent power to manage and
control pending litigation.'" *In re Aluminum Warehousing Antitrust Litig.*, 336
F.R.D. 5, 37 (S.D.N.Y. 2020) (quoting *Myers*, 624 F.3d at 547). This includes
the power to "alter or modify the class, create subclasses, and decertify the
class whenever warranted." *Sumitomo Copper Litig.* v. *Credit Lyonnais Rouse,
Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).

## B.    Analysis

Plaintiffs seek to certify three proposed classes:

(i)    A general conditions-of-confinement class, consisting of
"[a]ll individuals detained, incarcerated, and/or housed
in New York City Department of Correction facilities
from March 1, 2020, to May 11, 2023," which would
embrace all inmates, including those whose infection
status is not knowable but who were exposed to
unlawful conditions (the "**All Rikers Class**");[7]

(ii)   A COVID-infection class/subclass, consisting of "[a]ll
individuals detained, incarcerated, and/or housed in
New York City Department of Correction facilities from
March 1, 2020, to May 11, 2023, who either (a) were in
custody as of March 1, 2020, and remained in custody
at the time they contracted COVID-19 as shown in
either a positive COVID test or a retrospective COVID
antibody test, or (b) were in custody for at least 14 days,
and remained in custody at the time they contracted
COVID-19, as shown in either a positive COVID test or

---

[7]    While Plaintiffs' proposed classes are defined to encompass "all New York City
Department of Correction facilities," a DOC representative stated that all detainees were
held at jail facilities "located on Rikers Island."  (Rembert Decl. ¶ 6).

a retrospective COVID antibody test" (the "**Positive for COVID Class**"); and

(iii)    A medically-vulnerable class/subclass, consisting of "[a]ll individuals detained, incarcerated, and/or housed in New York City Department of Correction facilities from March 1, 2020, to May 11, 2023, who meet one or more of the following criteria: (i) were age 50 or over, or (ii) whom the DOC housed in North Infirmary Command, Elmhurst Hospital Prison Ward, or Bellevue Hospital Prison Ward, or (iii) whom DOC otherwise classified as medically-vulnerable" (the "**Medically Vulnerable Class**").

(Pl. Br. 13-14). The remainder of this Opinion proceeds in three parts: The Court begins by addressing whether the proposed classes satisfy the threshold requirements of Rule 23(a). It then considers whether the proposed classes meet the requirements of Rule 23(b). In doing so, the Court first considers whether final injunctive relief or corresponding declaratory relief is appropriate with respect the class as a whole, such that certification would be permissible under Rule 23(b)(2). Next, the Court turns to whether the proposed classes meet the predominance and superiority requirements of Rule 23(b)(3). Finally, the Court addresses Plaintiffs' applications to appoint themselves and their attorneys as lead representatives and class counsel, respectively, pursuant to Rule 23(d) and (g). As the Court will explain, it concludes that two of the three classes identified by Plaintiffs — specifically, the Positive for COVID Class and a modified Medically Vulnerable Class — satisfy the requirements of Rule 23(a) and (b), and that Plaintiffs and their counsel are appropriate representatives of those classes. The Court therefore certifies these two classes and appoints Plaintiffs as lead representatives and their counsel as class counsel. However,

the Court declines to certify the All Rikers Class, finding that the proposed class does not satisfy the requirements of Rule 23(b).

### 1. Plaintiffs Satisfy the Requirements of Fed. R. Civ. P. 23(a)

Turning first to the requirements of Rule 23(a), Defendants do not dispute that Plaintiffs have satisfied Rule 23(a)'s numerosity requirement, but argue that commonality, typicality, and adequacy are not satisfied. (*See generally* Def. Opp). As explained below, the Court disagrees and finds that the threshold requirements of Rule 23(a) have been met for all three of the proposed classes.

### a. Numerosity

Numerosity is satisfied when, as here, the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While the numerosity requirement is not "simply a numbers game," "[c]ourts have long applied a presumption that a class of forty members is sufficiently numerous." *Huang* v. *Shanghai City Corp*, No. 19 Civ. 7702 (LJL), 2022 WL 1468450, at *5 (S.D.N.Y. May 10, 2022) (citing *Robidoux* v. *Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). The parties do not dispute that the numerosity requirements have been satisfied for all three proposed classes. (*See* Pl. Br. 17; Def. Opp. 12). Plaintiffs provide that the proposed classes "contain thousands of members" (Pl. Br. 17 (citing Rosner Dep. 71:12-72:21)), and Defendants do not challenge this point (Def. Opp. 12 ("Defendants do not challenge the numerosity prong of the three proposed classes.")). Accordingly,

the Court concludes that all of Plaintiffs' proposed classes are sufficiently large to satisfy the numerosity requirement of Rule 23(a)(1).

### b.    Commonality

Rule 23(a)(2) requires that the putative class members' claims share "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To meet this requirement, Plaintiffs must affirmatively demonstrate, by a preponderance of the evidence, "the ability of the action to 'generate common *answers* apt to drive the resolution of the litigation.'" *Elisa W.* v. *City of New York*, 82 F.4th 115, 123 (2d Cir. 2023) (quoting *Dukes*, 564 U.S. at 350). "Thus, commonality exists if there is a question such that 'demonstration of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Dukes*, 564 U.S. at 350).  In order to conduct a commonality inquiry, a court must engage in "rigorous analysis," which will often "entail some overlap with the merits of plaintiffs' underlying claims." *Id.* (quoting *Dukes*, 564 U.S. at 351).  Importantly, the requirement of commonality is met where, although individual experiences and conditions may differ, the class members' injuries "derive from a unitary course of conduct by a single system." *Marisol A.* v. *Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

In arguing that the commonality requirement has been satisfied here, Plaintiffs maintain that Defendants' response to the pandemic stemmed from a "common plan, supervised by central management."  (Pl. Br. 18).  Turning first to the All Rikers Class, the Court agrees that a "common question" exists. *See Dukes*, 564 U.S. at 359 ("[F]or the purposes of Rule 23(a)(2) [e]ven a single

[common] question will do." (internal quotation marks omitted)).  To state a claim for violation of the Eighth and Fourteenth Amendments, Plaintiffs must show: "[i] a deprivation that is 'objectively, sufficiently serious' that [they] w[ere] denied the 'minimal civilized measure of life's necessities,' and [ii] a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety."  *Butler* v. *Suffolk Cnty.*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) (quoting *Gaston* v. *Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)); *see generally Darnell* v. *Pineiro*, 849 F.3d 17 (2d Cir. 2017).  Under Second Circuit precedent, whether Defendants were "aware of and deliberately indifferent to the conditions at [Rikers Island] is a common question subject to class-wide resolution."  *Butler*, 289 F.R.D. at 98; *see also Allen* v. *Koenigsmann*, No. 19 Civ. 8173 (LAP), 2023 WL 2731733, at *5 (S.D.N.Y. Mar. 31, 2023) (noting a "string of cases ... from this Circuit certifying classes based on common questions of correctional facilities' deliberate indifference").

As Plaintiffs' expert witness, Dr. Sara Kariko, stated, "it is not necessary to evaluate each staff member or person in custody to determine whether the City of New York adequately responded to COVID-19," as answers are "readily" discernible from "system-wide policies and procedures."  (Kariko Report 14). This determination aligns with decisions from other federal courts, which have repeatedly found that plaintiffs challenging the conditions of their confinement, as related to the COVID-19 pandemic, have sufficiently demonstrated commonality.  *See, e.g.*, *Maney* v. *State*, No. 20 Civ. 570 (SB), 2022 WL 986580, at *8 (D. Or. Apr. 1, 2022) (finding "common questions of law and fact" in a suit

involving correctional facilities' response to COVID-19); *Cameron* v. *Bouchard*, 462 F. Supp. 3d 746, 753, 772 (E.D. Mich. 2020) (finding commonality among "[a]ll of the Jail's inmates" when it was alleged that the county sheriff and commander of corrective services "were acting in deliberate indifference in response to the serious risks that COVID-19 posed to incarcerated individuals"), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020) (unpublished decision); *Savino* v. *Souza*, 453 F. Supp. 3d 441, 450 (D. Mass. 2020) (certifying a class of civil immigration detainees who alleged due process violations as a result of the risks of COVID-19, concluding that "case law supports a finding of commonality for class claims against dangerous detention conditions, even when some detainees are more at risk than others"); *Criswell* v. *Boudreaux*, No. 20 Civ. 1048 (DAD), 2020 WL 5235675, at *12-13 (E.D. Cal. Sept. 2, 2020) (finding commonality existed for a class of "all people who are now, or in the future will be, incarcerated [at certain facilities]," in an action challenging those facilities' responses to the COVID-19 pandemic).

The Court reaches the same result for the Positive for COVID and Medically Vulnerable Classes, for similar reasons. Regarding the Positive for COVID Class, Plaintiffs allege that they suffered the same injury as a result of Defendants' failure to implement an appropriate response to the pandemic. *See Johnson* v. *Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d. Cir. 2015) ("Rule 23(a)'s commonality requirement may be satisfied if plaintiffs demonstrate[] that the class members have suffered the same injury." (internal citations and quotation marks omitted)). As to the Medically Vulnerable Class,

the Court finds that while the exact injuries may vary, the "questions asked by each class member [are] subject to common resolution." *K.A.* v. *City of New York*, 413 F. Supp. 3d 282, 302 (S.D.N.Y. 2019). (*See also* Rosner Dep. 13:4-15 (stating that Correctional Health Services maintains a "uniform plan" in how it "was going to respond to Covid in DOC facilities")). In particular, the question for this class is whether Defendants' actions were unconstitutional in light of the heightened danger that COVID-19 poses to medically vulnerable individuals. *See Cameron*, 462 F. Supp. 3d at 746 (finding a common question existed for a "[m]edically-[v]ulnerable [s]ubclass," i.e., "whether COVID-19 presented … a severe risk of harm"). Accordingly, Plaintiffs have satisfied the commonality requirement for all three of their proposed classes.

### c. Typicality

The typicality inquiry requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Vincent* v. *Money Store*, 304 F.R.D. 446, 455 (S.D.N.Y. 2015) (quoting *Marisol A.*, 126 F.3d at 376). Significantly for the instant motion, courts have made clear that "[t]he typicality requirement is 'not demanding.'" *Villella* v. *Chem. & Mining Co. of Chile. Inc.*, 333 F.R.D. 39, 55 (S.D.N.Y. 2019) (quoting *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015)).

Applying this standard, Plaintiffs generally allege that the typicality requirement has been satisfied because "[a]ll nine named Plaintiffs were incarcerated at Rikers Island facilities during the pandemic." (Pl. Br. 19). Plaintiffs add that "Plaintiffs' experiences are typical, as a majority of them did, in fact, contract COVID while incarcerated." (Pl. Reply 9). On this point, the Court agrees.

In their opposition brief, Defendants offer several ultimately unavailing challenges to Plaintiffs' ability to satisfy the typicality requirement for each proposed class. (Def. Opp. 14-16). To begin, Defendants allege that the All Rikers Class is "too sprawling and diffuse to permit a reasonable comparison to the proposed class representative." (*Id.* at 15). Defendants point to Plaintiffs' ages, levels of care, and vaccination statuses as areas in which the proposed class representatives may differ from others in the proposed class. (*Id.*). The law is clear, however, that even if some proposed class members may differ in the "extent of their exposure to the[] conditions [at Rikers Island] and the exact nature of their injuries ... , [t]he representative claims need not be identical to the claims of every class member in order to meet the typicality requirement." *Butler*, 289 F.R.D. at 99 (quoting *Marriott* v. *Cnty. of Montgomery*, 227 F.R.D. 159, 172 (N.D.N.Y. 2005) (finding typicality existed for a class of "[a]ll persons who are or were detainees" at certain correctional centers during a defined period)). For purposes of the typicality requirement, it is sufficient that the Plaintiffs' claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *K.A.*, 413 F.

Supp. at 303.  Because Plaintiffs' injuries all arise from the same centralized policies imposed by Defendants, their detention at Rikers Island during the relevant time period is sufficient to satisfy the typicality requirement.

Next, Defendants challenge the typicality of Plaintiffs vis-à-vis the Positive for COVID Class because "attributing [COVID-19] to lax mask-wearing seems untenable."  (Def. Opp. 15).  However, even if true, this statement is irrelevant for purposes of the present motion.  Whether Plaintiffs' claim is ultimately untenable is a question of this action's merits, which is to be decided through the course of this litigation.  *See In re Initial Public Offering Sec. Litig.*, 471 F.3d at 41 (explaining that "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement").  For the purposes of class certification, it is sufficient that putative members of this class were all "in [Rikers Island] facilities during the relevant period, suffered the same injury of contracting COVID-19, and were all subject to the same alleged failures to take meaningful action in response to COVID-19."  *Maney*, 2022 WL 986580, at *9; *see also Gayle* v. *Meade*, No. 20 Civ. 21553 (MGC) (JG), 2020 WL 2744580, at *20 (S.D. Fla. May 22, 2020) (finding typicality when the proposed class members "suffered the same injury because they [we]re subject to the same confinement under the same allegedly unconstitutional conditions").  Furthermore, Defendants are incorrect that "none of the proposed class representatives contracted COVID-19," as the evidence shows that several named Plaintiffs contracted COVID-19.  (*See, e.g.,* SAC ¶¶ 59, 61, 62; Barnar Dep. 29:21-25; Azor-El Dep. 28:2-29:8).

26

Finally, Defendants argue that the Medically Vulnerable Class fails because Plaintiffs have not alleged that the proposed class suffered any injury. (Def. Opp. 15). That is, Defendants reason that because these individuals did not necessarily contract COVID-19, their claims are too speculative to qualify for class certification. (*Id.*). However, Plaintiffs in this class allege the same core claim, which is that "Defendants maintained unconstitutional conditions at [Rikers Island] over the Class Period." *Brennan* v. *City of New York*, No. 19 Civ. 2054 (NGG) (CLP), 2023 WL 5672590, at *1, 7 (E.D.N.Y. Sept. 1, 2020) (finding typicality for a class of "all detainees at [a] facility" because plaintiffs "suffered injuries ... result[ing] from ... [d]efendants' deliberate indifference to the facility's conditions").

Plaintiffs need not allege that they suffered the specific injury of contracting COVID-19 in order to proceed with their claims. Rather, Plaintiffs may proceed on the basis that they were medically vulnerable individuals who were exposed to unconstitutional conditions during their confinement. They allege that the substandard conditions were the result of the policies (or lack thereof) put in place by Defendants. At this stage, such allegations are sufficient. The Court thus finds that Plaintiffs have adequately demonstrated typicality for all three proposed classes.

### d.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy has two components: 'First, class counsel must be qualified,

experienced and generally able to conduct the litigation,' and '[s]econd, the

class members must not have interests that are antagonistic to one another.'"

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc.* v. *AMC Ent. Holdings, Inc.*,

338 F.R.D. 205, 212 (S.D.N.Y. 2021) (quoting *In re Drexel Burnham Lambert*

*Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Here, both Plaintiffs and their counsel are adequate representatives of

the proposed classes.  As Plaintiffs point out, there is no indication that any of

them has a conflict with this case, and Plaintiffs have tirelessly litigated this

action over the past several years.  (Pl. Br. 19-20).  While Defendants claim that

Plaintiffs are not representative of the detainees who "actually suffered a

cognizable harm" because the "proposed Representatives are distinct from

those who *did* contract COVID-19" (Def. Opp. 16-17), this contention is simply

false.  As previously addressed, the SAC alleges that several of the proposed

representative Plaintiffs contracted COVID-19 while incarcerated.  (*See* Pl.

Reply 4; SAC ¶¶ 57, 59, 61, 65).

Defendants further question the ability of the proposed representatives to

adequately represent the interests of the classes because the majority of

Plaintiffs were housed in an infirmary setting at Rikers Island, as opposed to

the general population.  (Def. Opp. 16-17).  However, as Defendants later

acknowledge, Plaintiff Clanton was in fact housed in a non-infirmary facility.

(*Id.* at 17).  Moreover, Defendants have failed to show that the representative

Plaintiffs have "[any] interests antagonistic to the interests of other class

members."  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d

242, 249 (2d Cir. 2011) (quoting *Denny* v. *Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)); *see also Brennan*, 2023 WL 5672590, at *8 (determining that class was adequately represented when plaintiffs were detained at same institution over same period, "reflect[ing] an understanding of the facility's conditions," and "show[ed] an interest in the litigation by providing depositions relating to their experience"); *Wragg* v. *Ortiz*, 462 F. Supp. 3d 476, 516 (D.N.J. 2020) (finding adequacy requirement met when petitioners were all confined at same facility and thus "subject to the same potentially injurious treatment").

Like the representative Plaintiffs, Plaintiffs' counsel has displayed an admirable commitment to this litigation.  (*See* Pl. Br. 20).  Furthermore, Plaintiffs' counsel has previously served as class counsel in several cases that resulted in positive outcomes.  (Pl. Reply 9).  The Court has faith that Plaintiffs' counsel will continue to vigorously prosecute this case, whether that is independently or with the assistance of co-counsel.  (*See id.*).  Accordingly, the Court finds that both Plaintiffs and their counsel are adequate representatives of the proposed classes.

### e.    Ascertainability

Lastly, the implied requirement of ascertainability dictates that "a class must be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member,' and must be 'defined by objective criteria that are administratively feasible,' such that 'identifying its members would not require a mini-hearing on the merits of each

case.'" *de Lacour* v. *Colgate-Palmolive Co.*, 338 F.R.D. 324, 334 (S.D.N.Y. 2021) (quoting *In re Petrobras Secs.*, 862 F.3d at 260).

As Defendants acknowledge, DOC and Correctional Health Services can determine, through available detention and medical records, the individuals held at Rikers Island during the relevant periods, as well as those who were diagnosed with COVID-19.  (Def. Opp. 18; *see also* Pl. Reply 5 (describing how "electronic health records ... show who got COVID"); Rosner Dep. 20:23-22:4 (describing electronic health records)).  As the Court understands it, Defendants' sole dispute over the ascertainability of the proposed classes relates to the "varying characteristics of the population"; Defendants argue that it would be "virtually impossible to determine whether a particular individual had encountered ... a staff member who was both infectious and not wearing a mask." (Def. Opp. 18 (emphasis omitted)).  Despite Defendants' efforts to rely on this "causal issue" (*id.*), such an argument is detached from the standard for demonstrating ascertainability, which standard merely requires Plaintiffs to show that the characteristics of the proposed classes are "defined by objective criteria, without a subjective determination."  *Mitchell* v. *Cnty. of Clinton,* No. 06 Civ. 254 (NAM), 2007 WL 1988716, at *4, 7 (N.D.N.Y. July 5, 2007) (quoting *Dunnigan* v. *Metro. Life Ins. Co.,* 214 F.R.D. 125, 135 (S.D.N.Y. 2003)) (finding that a class of incarcerated individuals placed in the custody of the Clinton County Jail "from October 24, 2003 through the date on which [the County] cease or ceased, or are enjoined from, enforcing their unconstitutional policy, practice and custom" was "ascertainable").  Here, because Plaintiffs have

established the existence of aggrieved classes whose members can be readily identified through detention and medical records, the requirement of ascertainability has been met.

### 2. Two of the Proposed Classes Satisfy the Requirements of Fed. R. Civ. P. 23(b)

Having determined that Plaintiffs satisfy the requirements of Rule 23(a), the Court must now consider whether their proposed classes fall within one of the three categories defined in Rule 23(b). Here, Plaintiffs seek certification pursuant to Rule 23(b)(2) and 23(b)(3). While the Court finds that the All Rikers Class fails to satisfy either provision, it certifies the two remaining proposed classes (the Positive for Covid Class and a modified Medically Vulnerable Class) pursuant to Rule 23(b)(3).

### a. Rule 23(b)(2)

To begin, the Court finds that none of the proposed classes satisfies the requirements of Rule 23(b)(2), which "allows class treatment when the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Nnebe* v. *Daus*, No. 06 Civ. 4991 (RJS), 2022 WL 615039, at \*12 (S.D.N.Y. Mar. 1, 2022) (quoting *Dukes*, 564 U.S. at 360). Certification under Rule 23(b)(2) is only proper when "a single injunction ... would provide relief to each member of the class." *Sykes*, 780 F.3d at 80 (quoting *Dukes*, 564 U.S. at 361). Because of this requirement, Rule 23(b)(2) is "most commonly relied upon by litigants seeking institutional reform in the form of injunctive relief." *Stinson* v. *City of New York*, 282 F.R.D.

360, 379 (S.D.N.Y. 2012) (quoting *Marisol A.* v. *Giuliani*, 929 F. Supp. 662, 692 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997)).

To support their claim for class certification under Rule 23(b)(2), Plaintiffs "request[] injunctive relief in the form of a medical monitoring program to follow up on COVID-exposed former detainees." (Pl. Br. 20). This injunctive relief seeks to utilize electronic medical records from Correctional Health Services that "detail which people in custody contracted COVID-19," in order to determine who requires "ongoing monitoring and care." (*Id.* (quoting Kariko Report 14)). While Plaintiffs are correct that courts have recognized "a medical monitoring program as a form of injunctive relief" in certain class action contexts (*id.*), such recognition is not appropriate here.

As an initial matter, Plaintiffs do not specify that they seek certification under Rule 23(b)(2) only for those in the Positive for COVID Class. Rather, Plaintiffs assert that the injunctive relief can serve as a basis for certifying *all* classes because the program would "follow up on COVID-exposed former detainees." (Pl. Br. 20). However, this injunctive relief, if warranted, would seemingly apply only to those who contracted COVID-19 while in the custody of DOC, and thus apply exclusively to members of the Positive for COVID Class. (*Id.*). Such a conclusion is supported by Plaintiffs' own expert witness, Dr. Sara Kariko, who stated that "those who have had COVID-19 have increased risk of long-term consequences from the disease." (Kariko Report 14). Dr. Kariko observed that it would be feasible to determine those individuals who had previously contracted COVID-19, such that they required "ongoing

monitoring and care." (*Id.*).  There is no basis to certify the other proposed classes based on this outlined injunctive relief, because any individual who theoretically requires medical monitoring is a member of the Positive for COVID Class.

Even for the Positive for COVID Class, however, the Court finds that certification under Rule 23(b)(2) is not appropriate.  "As a general rule, class certification under Rule 23(b)(2) is improper if the primary relief sought by the action is monetary damages." *Bolanos* v. *Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 156 (S.D.N.Y. 2002) (quoting 5 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 23.43[3][a] (Matthew Bender 3d ed. 2002)).  Here, Plaintiffs are predominantly seeking individualized damages and, at this stage in the litigation, the request for monetary damages is "not merely incidental to plaintiffs' request for injunctive relief." *Id.* at 157.  In their Prayer for Relief in the SAC, Plaintiffs specifically state that they seek "[a]ctual economic damages, including damages for medical monitoring necessary for those who have contracted COVID-19," meaning that their requested damages would compensate Plaintiffs for the same injuries for which they seek injunctive relief. (SAC at 42).

Furthermore, the proposed injunctive relief is fundamentally incohesive. *See In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) ("Proposed medical monitoring classes suffer from cohesion difficulties, and numerous courts across the country have denied certification of such classes.").  In this case, each class member's need for medical monitoring would be highly

individualized based on their unique medical conditions.  *See id.* (explaining that the proposed medical monitoring class presented a "myriad of individual issues"); *see also House* v. *Pritzker*, 28 F. Supp. 3d 222, 250 (S.D.N.Y. 2014) (noting that courts raise concerns around "future medical monitoring" because "the need and desire for such monitoring [may] vary among individual class members").  While the public health emergency for COVID officially ended on May 11, 2023 (*see* Pl. Br. 13 n.14), the virus continues to exist.  Because the injunctive relief relates solely to the long-term impact of COVID-19, individual class members' conditions may depend on the number of times they contracted the virus (including outside of Rikers Island) and/or their personal medical histories, as well as their desire to receive this care.  In sum, because (i) medical monitoring is inappropriate given the individualized claims of proposed class members and (ii) monetary damages are sought for the same injuries, the Court denies certification of any of the proposed classes on the basis of Rule 23(b)(2).

> **b.    Rule 23(b)(3)**

On the other hand, the Court finds that the Positive for COVID Class and a modified Medically Vulnerable Class satisfy the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), class certification is appropriate if common questions "predominate over any questions affecting only individual members," and if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These two proposed

classes, but not the All Rikers Class, meet the predominance and superiority requirements.

### i.    Predominance

The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Brown* v. *Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (citing *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006)).  The purpose of this requirement is to limit class certification to only those cases where it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Mazzei*, 829 F.3d at 272 (citation and quotation marks omitted).  The Supreme Court has noted that the standard for Rule 23(b)(3) is considerably "more demanding" than the commonality requirement of Rule 23(a).  *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 34 (2013); *accord Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 623-24 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied ..., the predominance criterion is far more demanding.").

Plaintiffs argue that courts consistently find the predominance requirement satisfied "where class members' claims are based on a centralized policy or procedure."  (Pl. Br. 21 (citing *Maney*, 2002 WL 986580, at *16)).  The crux of Plaintiffs' argument appears to be that while individual experiences of detainees at Rikers Island may have varied, the overall conditions were sufficiently similar as to warrant class adjudication.  To that end, Plaintiffs

posit that, when looking at the totality of Defendants' response to COVID-19 at Rikers Island, a court can determine the adequacy of that response on a class-wide basis. (Pl. Reply 7-8).

Despite Plaintiffs' claims, the Court finds that the All Rikers Class is unable to meet the more demanding standard of Rule 23(b)(2), due to the myriad of individualized issues that the proposed class raises. As Plaintiffs concede, "[o]ver 10,000 detainees were incarcerated at Rikers Island and its related facilities" during the pandemic. (Pl. Br. 12). These individuals were housed in different facilities at Rikers Island and passed through the facilities for varying lengths of time during a three-year window. (*Id.* at 13-14). "For a class of [great] size, covering [an extensive] length of time, the many individual considerations of class members' conditions" have been found to "outweigh" common issues. *Brennan*, 2023 WL 5672590, at *5-7, *12-14 (finding that proposed class satisfied commonality requirement of Rule 23(a)(2), but not predominance requirement of Rule 23(b)(2)); *see also* Transcript of February 2, 2023 Oral Argument at 10, *Dunn* v. *City of New York*, No. 21 Civ. 9012 (DLC) (S.D.N.Y.) (Dkt. #49) (rejecting finding of predominance when class defined was "too sprawling and unfocused," including "different facilities with different management, different inmates and different groups of inmates, each experiencing different conditions at different periods of time"). Because the Court does not find that the proposed class members' common injuries predominate over individualized issues, the Court declines to certify the All Rikers Class pursuant to Rule 23(b)(3).

36

On the other hand, the Court concludes that the remaining two classes — the Positive for COVID Class and the Medically Vulnerable Class — satisfy the predominance requirement. Beginning with the Positive for COVID Class, the Court finds that the proposed class is "sufficiently cohesive" to support class certification under Rule 23(b)(3). All members of the proposed class allegedly suffered the same injury (contracting COVID-19) as a result of the same conduct (Defendants' centralized policies). Since all members of the class assert the same injury — and thus class-wide methods may be used to determine individual damages — the number of "individualized damages issues present" are significantly more manageable than with the All Rikers Class. *Brennan*, 2023 WL 5672590, at *13. Further, given the prevalence of common issues, the Court finds that class certification would "substantially advance the case" by "reduc[ing] the range of issues in dispute and promot[ing] judicial economy." *Johnson*, 780 F.3d at 138 (citation omitted).

The Medically Vulnerable Class is similarly cohesive and therefore certifiable. As opposed to the All Rikers Class, which covers every individual who passed through the facility in a multi-year period, the Medically Vulnerable Class raises "key factual questions that unite the [Proposed] Class by addressing the nature and severity of the alleged conditions." *MacNamara* v. *City of New York*, 275 F.R.D. 125, 152 (S.D.N.Y. 2011). In order to meet the predominance requirement, however, the Court will redefine this class to include only those detainees whom the DOC housed in North Infirmary Command, Elmhurst Hospital Prison Ward, or Bellevue Hospital Prison Ward.

37

*See Brooklyn Ctr. for Indep. of the Disabled* v. *Bloomberg*, 290 F.R.D. 409, 420 (S.D.N.Y. 2012) ("[T]he court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision." (citation omitted)); *Charron* v. *Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010) ("A district court 'is not bound by the class definition proposed in the complaint,' and is empowered to carve out an appropriate class." (quoting *Lundquist* v. *Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993)).  Compared to the class as proposed (*see* Pl. Br. 14), the Court finds that removing all individuals who merely passed through Rikers Island and were over the age of 50, as well as all those individuals amorphously classified as "medically vulnerable," allows for increased manageability of the class.  (*See* Rembert Decl. ¶ 10 (explaining that approximately "14.6% of the new admission population from January 1, 2019 to October 23, 2023, w[ere] above the age of fifty")).  This class definition allows for a narrower focus on the effects of conditions of confinement at Rikers Island on medically vulnerable individuals, who were housed in specific medical units within the facility.

Conversely, the Court is unmoved by Defendants' argument against certification of these two classes under Rule 23(b)(3).  Defendants claim that predominance cannot be found for any of the proposed classes because Plaintiffs have limited their own inquiry "so narrowly by limiting it to mask usage."  (Def. Opp. 20).  While Plaintiffs' opening brief may have focused on masking (Pl. Br. 6-12), the SAC clearly identified a host of additional policies

that shaped Defendants' response to the pandemic (*see generally* SAC). Plaintiffs clearly challenge the constitutionality of these policies as a whole, as opposed to a narrow challenge related to mask usage. Furthermore, Defendants' argument treads too closely to the merits of Plaintiffs' claims. At this time, the Court need not (and, indeed, ought not) address the merits beyond that which is required to resolve the instant motion. *See Shahriar* v. *Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (explaining that, at the class certification stage, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement" (quoting *In re Initial Public Offering Sec. Litig.*, 471 F.3d at 41)).

Accordingly, the Court finds that the predominance requirement has not been satisfied for the All Rikers Class. However, this threshold has been met for the Positive for COVID Class and the Medically Vulnerable Class, as modified by this Opinion.

### ii. Superiority

Finally, under Rule 23(b)(3), the moving party must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Johnson*, 780 F.3d at 137 (quoting Fed. R. Civ. P. 23(b)(3)). Rule 23(b)(3) class actions "can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013). In analyzing this requirement, courts must consider four nonexclusive factors:

> [i] the interests of the class members in maintaining
> separate actions; [ii] the extent and nature of any
> litigation concerning the controversy already
> commenced by or against members of the class; [iii] the
> desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; and
> [iv] the difficulties likely to be encountered in the
> management of a class action.

*In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 230 (internal quotation marks omitted).

As the Court has already found that the All Rikers Class fails to satisfy the Rule 23(b) requirements, the Court need not address it further here. In the interest of completeness, however, the Court observes that this proposed class would also raise serious issues surrounding superiority. The All Rikers Class's proposed "size and timeframe create[s] issues of manageability." *Brennan*, 2023 WL 5672590, at *15. Furthermore, the need to "evaluate individualized damages reduces much of the[] efficiency gains," because a court would still need to calculate individualized damages based on the conditions that existed in the specific facility at Rikers Island that housed that specific class member, at a specific time, for the length of time during which that individual was detained. *See id.* at *14 (explaining the difficulty in establishing predominance when "individualized proceedings may resemble individual actions that determine both liability and injury," thus reducing efficiency).

Moving to the remaining classes, the Court observes that Defendants do not offer a multifaceted challenge to Plaintiffs' claim that the Positive for COVID and modified Medically Vulnerable Classes do not meet the superiority requirement. Instead, focusing exclusively on the second factor, Defendants

state that there are "currently thousands of 'conditions' cases presently being litigated in the Southern and Eastern Districts of New York," and as such, there is "no particular benefit in consolidating all these cases." (Def. Opp. 21; *see also* Gajtani Decl. ¶¶ 7-10 (noting the number of lawsuits broadly filed against DOC for the years 2018-2023)). However, as Plaintiffs note, Defendants do not identify the scope or nature of these cases. (Pl. Reply 11). Thus, Defendants have failed to show that "individual class members" have "any interest in prosecuting their claims separately, or that any such litigation has already commenced." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 53 (S.D.N.Y. 2012).

More fundamentally, superiority is found here with regards to the Positive for COVID Class and the modified Medically Vulnerable Class because it would be inefficient to have class members litigate individually, when common questions predominate. Factors three and four thus favor certification of these two classes, as certification "will achieve 'significant economies of time, effort and expense, and promote uniformity of decision.'" *Brennan*, 2023 WL 5672590, at *15 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130)). Moreover, individuals in these classes, some of whom are still incarcerated, may not be able to litigate these important yet labor-intensive claims individually due to "limited resources and a lack of familiarity with the legal system." *Vega* v. *Semple*, No. 17 Civ. 107 (MEG), 2024 WL 2941657, at *17 (D. Conn. June 11, 2024) (explaining that certification may permit "judicial efficiency," as opposed to a "numerous *pro se* actions bringing

41

identical claims"); *see also In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 230 ("[W]ithout class notification, most putative class members will not even know that they suffered a violation of their constitutional rights.").  In addition to streamlining the litigation process, the class action mechanism will ensure that class members are "aware of and able to vindicate [their constitutional] rights." *Nnebe*, 2022 WL 615039, at *9.  For all of these reasons, the Court finds that the Positive for COVID Class and the modified Medically Vulnerable Class satisfy the superiority requirement of Rule 23(b)(3), and thus can be certified as classes.

### 3.    The Court Appoints Lead Plaintiffs and Class Counsel

The Court concludes by addressing Plaintiffs' application to serve as lead plaintiffs and for their attorneys to serve as class counsel.  (*See* Pl. Br. 19).  For substantially the same reasons as those discussed with respect to Plaintiffs' showing of adequacy of representation under Rule 23(b)(3) (*see supra* B.1.d), the Court finds that Plaintiffs and their counsel are suitable to represent the two certified classes.  Both Plaintiffs and their counsel have diligently pursued this litigation and the Court is confident that they will continue to adequately represent the certified classes.  Accordingly, the Court grants Plaintiffs' motion in both respects.

### CONCLUSION

For the foregoing reasons, the Court (i) grants in part Plaintiffs' motion for class certification and (ii) grants Plaintiffs' application to serve as class representatives and for their counsel, Keenan & Bhatia, LLC, to serve as class

counsel. Accordingly, the parties are hereby ORDERED to submit a joint letter proposing the next steps in this case on or before **November 29, 2024.**

The Clerk of Court is directed to terminate the pending motion at docket entry 193 in the *Azor-El* docket (20 Civ. 3650). The Clerk of Court is further directed to terminate the pending motion at docket entry 144 in the *Barnar* docket (20 Civ. 3978); docket entry 144 in the *Carter* docket (20 Civ. 3980); docket entry 118 in the *Cole* docket (20 Civ. 3981); docket entries 139, 140, 141, 142, 146, 153, and 154 in the *Fennell* docket (20 Civ. 3982); docket entries 138, 139, 140, 141, 152, and 153 in the *Gomez* docket (20 Civ. 3983); docket entries 169, 170, 171, 172, 176, 183, and 184 in the *Medina* docket (20 Civ. 3985); and docket entries 139, 140, 141, 142, 146, 153, and 154 in the *Kelly* docket (20 Civ. 3990).

When this Court initially considered the issue of consolidation, it determined to consolidate the cases but retain dockets for each of the member cases. (*See* Dkt. #27). Given the resolution of the instant certification motion, the Court now believes that maintenance of all of these cases is unnecessary. The Clerk of Court is directed to docket this Opinion in each of the case numbers listed in the caption of the Opinion, and then close Case Numbers 20 Civ. 3978, 20 Civ. 3980, 20 Civ. 3981, 20 Civ. 3982, 20 Civ. 3983, 20 Civ. 3985, and 20 Civ. 3990. In addition, the Clerk of Court is directed to administratively close two related cases, *Brown* v. *N.Y.C. Dep't of Corr.*, No. 20 Civ. 3979 (KPF), and *Graham* v. *N.Y.C. Dep't of Corr.*, No. 20 Civ. 3984 (KPF).

Going forward, documents filed in this litigation are to be filed only in Case Number 20 Civ. 3650.

SO ORDERED.

Dated:    September 27, 2024
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge